Bennie EDWARDS, et al.,
Plaintiffs–Appellees,

v.

ARMSTRONG WORLD INDUSTRIES, INC., et al., Defendants.

The Celotex Corporation,
Defendant–Appellant.

No. 89–1570.

United States Court of Appeals,
Fifth Circuit.

Sept. 20, 1990.

Donald J. Verplancken, Elizabeth M. Thompson, Butler & Binion, Houston, Tex., for defendant-appellant.

David M. Glaspy, Walnut Creek, Cal., Joseph F. Bruegger, Brent M. Rosenthal, Baron & Budd, Dallas, Tex., Monroe Kirby, Tyler, Tex., A.B. Conant, Ruth Ann Norton, Shank, Irwin, Conant, Lipshy & Casterline, Dallas, Tex., David M. Stagner, Sherman, Tex., Gary D. Elliston, Dehay & Blanchard, Dallas, Tex., Joe Riddles, Dallas, Tex., Frank Bean, Samuel E. Stubbs, Fulbright & Jaworski, Richard L. Josephson, Baker & Botts, Ronald E. Cook, Bruce Kemp, Mayor, Day & Caldwell, Stephen S. Andrews, Woodard, Hall & Primm, Houston, Tex., Don Kent, Cowles & Thompson, Tyler, Tex., Lyn Stevens, Weller, Willis & Green, Beaumont, Tex., for plaintiffs-appellees.

Before POLITZ, JOLLY, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Celotex Corporation appeals the punitive damage award in favor of plaintiffs, Bennie and Joann Edwards, for asbestosis related to Bennie Edwards's exposure to asbestos-containing products. Celotex principally contends that the district court erred in assessing punitive damages against Celotex for the acts of its predecessor, Philip Carey; the punitive damages are excessive; and the award of punitive damages violates Celotex's federal and state constitutional rights. We affirm the judgment of the district court.

## I.  Facts

While working for sixteen years as an insulator, Bennie Edwards was exposed to asbestos-containing insulation products manufactured by several companies, including Philip Carey Corporation, a predecessor of Celotex.  He contracted asbestosis.  Plaintiffs' claims necessarily assumed, and the court held, that Celotex is liable as the successor-in-interest to Philip Carey.  The jury awarded the plaintiffs a total of $491,-000 in actual damages.  Because Celotex was found 7.18% responsible for the damages, a judgment of $35,525.80 in compensatory damages resulted.  Additionally, the jury awarded the plaintiffs punitive damages of $245,500 against Celotex.  Celotex argued in both a Rule 59 motion and in a Motion for Entry of Judgment that the district court should award only compensatory damages against Celotex or order a remittitur as to the amount of punitive damages.  Upon the denial of these motions, Celotex timely appealed.

## II.  Punitive Liability of a Successor Corporation

■ Celotex adroitly contends that Texas law would not impose liability for punitive damages upon it as a corporate successor to Philip Carey.[1]  In part, Celotex suggests, this result follows from state corporate law principles, but also and more importantly because penalizing Celotex for the sins of Philip Carey would disserve the state's twin goals of punishment and deterrence.  In two recent cases we have rejected these arguments, finding that they both depended upon evidence of Celotex's corporate history that was not in the record.  *Aguirre v. Armstrong World Industries, Inc.,* 901 F.2d 1256, 1258 (5th Cir.1990); *King v. Armstrong World Industries, Inc.,* 906 F.2d 1022, 1029 (5th Cir.1990).  We reject them again here for the same reason.  Celotex made no effort to seek a ruling in the trial court that would favorably characterize—under Texas or other applicable law—its acquisition of Philip Carey by means of a stock purchase of Carey's owner corporation followed immediately by an "agreement of merger."[2]  Perhaps painfully aware that its efforts to avoid liability for punitive damages based on its purchase of Philip Carey have been largely unsuccessful,[3] Celotex chose to tantalize the trial court rather than to fulfill by truly joining issue, with the necessary proof, on the legal significance of its status as a successor corporation.

## III.  Excessiveness of Punitive Damages

■ Celotex alternatively seeks a remittitur of the punitive damages of $245,500 which under Texas law should be reasonably proportioned to the amount of actual damages.  *Alamo National Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981).  Punitive damages here total nearly seven

1.  Celotex also maintains that there was neither any evidence that *it* was grossly negligent nor evidence that Edwards was exposed to *Celotex* products.  This claim is misplaced, however, because the award of punitive damages was predicated upon the alleged acts or omissions of Philip Carey.  The district court's charge to the jury instructed that "the Celotex Corporation is the successor-in-interest to Philip Carey Manufacturing Corporation and, as such, has assumed all the ordinary liabilities of Philip Carey Manufacturing Corporation."  Individual jury interrogatories concerning Edwards's exposure to the defendants' products, whether the products were unreasonably dangerous, whether the products had adequate warnings, and whether the defendants were grossly negligent, each included a checklist of the defendants and identified "The Celotex Corporation (successor to Philip Carey Manufacturing Corporation)."  Inasmuch as Celotex's liability was claimed to be derivative of that of Philip Carey, no proof of Celotex's actions or omissions was warranted.  Celotex's "no evidence" argument represents merely another way to characterize its dispute with the derivative theory, which we address above.

2.  The 1972 "agreement of merger" between Panacon Corporation (as Philip Carey's owner was then called) and Celotex was offered in evidence by *plaintiffs,* perhaps to point out that Celotex assumed Panacon's liabilities in the broadest possible terms.  Otherwise, Philip Carey's rather complex corporate history is recited, though not proven, by Celotex in the introduction to a pre-trial memorandum.  The trial court was not asked to ferret out the implications of these transactions for purposes of considering exemplary damages.

3.  *See* cases cited in *Aguirre,* 901 F.2d at 1258.

times the actual damages apportioned against Celotex.

Notwithstanding requiring reasonable proportionality, however, *Kraus* held that there can be no set rule or ratio between the amount of actual and exemplary damages which will be considered reasonable, and that each case must be analyzed according to several factors:

> (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety. *Id.*

■ Contrary to the Edwards's position, Texas does not require that "reasonable proportionality" be evaluated according to the total amount of actual damages rather than the proportionate share allocated against Celotex. In *John Deere Co. v. May,* 773 S.W.2d 369, 377–78 (Tex.App.—Waco 1989, writ denied), the court determined the reasonableness of a punitive damage award by measuring it against a defendant's share of actual damages. The court concluded that a $550,000 punitive damage award was not excessive compared to the co-defendant's 15% liability for actual damages of $1,050,000 ($157,500).

■ Although we review the proportionality of the punitive damage award against Celotex in comparison with its allocated share of actual damages, however, we do not find it so excessive as to suggest that passion rather than reason motivated the jury. *Wright v. Gifford Hill & Co., Inc.,* 725 S.W.2d 712, 714 (Tex.1987) (quoting *Tynberg v. Cohen,* 76 Tex. 409, 416, 13 S.W. 315, 316 (1890)). The conduct of Philip Carey in marketing its asbestos products, as reported at trial, could support an award of gross negligence. Celotex contests neither the jury finding nor the other *Kraus* factors bearing on the size of the punitive damage award. Moreover, the award in this case is not grossly disproportionate to other punitive damage awards

under Texas law.[4] *See, e.g., King, supra* (punitive damages—$1,550,000; actual damages about $1 million); *Aguirre, supra* (punitive damages $201,000; actual damages $658,000); *Victoria Bank & Trust Co. v. Brady,* 779 S.W.2d 893, 912 (Tex.App.—Corpus Christi 1989), *writ granted,* —— Tex.S.Ct.J. —— (1990) ($2.2 million punitive damages; actual damages $495,000); *Donnel v. Lara,* 703 S.W.2d 257, 261–62 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.) ($4,500 punitive damage award not excessive where jury awarded two dollars ($2.00) as actual damages for harassing phone calls); *Russell v. Truitt,* 554 S.W.2d 948, 956 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.) ($55,000 punitive damage award not excessive as compared to $8,000 in actual damages).

## IV. Constitutional Limitations

■ Celotex finally repeats its arguments that multiple punitive damage awards for a single course of conduct violate the due process clauses of the Texas and federal constitutions and the Texas constitution's excessive fines clause, Art. I § 13. This court resolved such arguments against Celotex in *King, supra,* and there is no controlling difference between the two cases. That Celotex did not challenge the disproportionality of the *King* punitive damage award, but does so challenge the instant award, does not affect the application of *King* for several reasons. First, we have reviewed the award in accord with Texas legal principles and found it substantiated. Celotex has not asserted that federal procedural due process limits are transgressed by the application of Texas punitive damage law in an individual case. Second, we do not perceive the punitive damage award here as being so individually outrageous as to shock the judicial conscience even though it has survived scrutiny under state law. *See Browning–Ferris Indus. v. Kelco Disposal Co., Inc.,* —— U.S. ——, 109 S.Ct. 2909, 2923, 106 L.Ed.2d 219 (1989) (Brennan and Marshall, JJ., concurring). Third, a challenge of excessiveness

---

4. Texas recently enacted a statutory cap on punitive damage awards, generally limiting them to four times actual damages or $200,000, whichever is greater. Tex.Civ.Prac. & Rem. Code Ann. §§ 41.001–008 (Vernon Supp.1988). The cap does not apply in this case.

as to an individual punitive damage award does not reach the broader issue of the propriety of serial punitive damage awards in mass tort litigation.

As for Celotex's pleas for relief from the onslaught of serial punitive damage awards, we can only echo *King*'s "misgivings" that no due process or legislative remedy is available in this circuit. 906 F.2d at 1033. *Compare Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277 (2d Cir.1990), *petition for cert. filed,* No. 90–121 (July 16, 1990) (outlining possible theories of due process violation). Celotex supplemented its post-trial motions in this case with affidavits reflecting that between September, 1988 and March, 1989, judgments for punitive damages exceeding $10 million were entered against it, compared with $15 million in adverse actual damage judgments. If no change occurs in our tort or constitutional law, the time will arrive when Celotex's liability for punitive damages imperils its ability to pay compensatory claims and its corporate existence. Neither the company's innocent shareholders, employees and creditors, nor future asbestos claimants will benefit from this death by attrition.

With our own misgivings, we AFFIRM.