United States Court of Appeals,

Fifth Circuit.

No. 92-1557.

Bennie EDWARDS and Joann Edwards, Plaintiffs-Appellees,

v.

ARMSTRONG WORLD INDUSTRIES, INC., et al., Defendants,

The Celotex Corporation, Defendant-Appellant.

Nov. 5, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, GOLDBERG and JONES, Circuit Judges.

GOLDBERG, Circuit Judge:

This case epitomizes the way that toxic tort litigation has corroded our judicial system. Here we have an asbestos poisoning dispute in which the defendant has sought the protection of the bankruptcy laws to shield itself from the multitude of claims generated by this one-time miracle fabric turned cancer-causing nightmare. To the bankruptcy court now falls the herculean task of managing the problems generated by the unprecedented magnitude of these disputes. It is this court's duty to insure that the case management tools the bankruptcy court utilizes to control these conflicts do not overwhelm its primary obligation to dispense justice.

The precise question before us centers around the power of bankruptcy courts to stay proceedings pending in other courts which might have some effect on the ability of the bankruptcy judge to manage the estate. The Bankruptcy Code provides judges with those equitable powers essential to serving the twin aims of bankruptcy law; protecting the debtor from the tentacles of his or her creditors and, fair distribution of the estate. *See* H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6296-97. We must decide what limits must be placed on the bankruptcy court's power to insure that both debtors and creditors remain adequately protected.

No usurpation is intended in this decision to denigrate the powers of the bankruptcy court,

nor did I intend any trespass upon the metes and bounds of bankruptcy courts' treasured turfs. Indeed, neither side to this controversy has a perpetual lease or any tenure of ownership that is infrangible and indestructible. It is not a struggle between any potential usurpers. Instead, both the district court and the bankruptcy court should both use what they think are appropriate transits and calipers in surveying their jurisprudential turfs.

While cognizant of the repercussions that our opinion may have on other disputes, parties, etc., we should be careful to make decisions based only upon the merits of the particular cases before us. In the instant case, plaintiffs wish to execute a supersedeas bond against a non-bankrupt surety. Because the appeal for which the bond was posted has terminated, the bankrupt and therefore also the bankruptcy court have lost any control over this asset. Consequently, we decline to extend the reach of the bankruptcy court's authority to stay these proceedings and we affirm the ruling of the district court in releasing the supersedeas bond to the plaintiffs.

## I. Facts

In April of 1989, the United States District Court for the Northern District of Texas entered a $281,025.80 judgment in favor of Bennie and Joann Edwards and against the Celotex Corporation ("Celotex") for asbestos-related injuries. To stay execution on this judgment while pursuing an appeal, Celotex posted a supersedeas bond for $294,987.88. Northbrook Property and Casualty Insurance Company ("Northbrook") served as surety on the bond. Northbrook, also Celotex' insurer, secured their participation in the bond using insurance proceeds remaining to be paid to Celotex under a settlement agreement resolving coverage disputes between Northbrook and Celotex.

In an opinion issued on September 20, 1990, this court affirmed the plaintiff's judgment against Celotex. *Edwards v. Armstrong World Indus., Inc.,* 911 F.2d 1151 (5th Cir.1990). Celotex did not move for rehearing or a stay of the mandate and, on October 12, 1990, the mandate issued. That same day, Celotex filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida.

The filing of Celotex' Chapter 11 petition automatically stayed the continuation of all "proceedings against any of the Debtors" and the commencement of "any act to obtain possession of

property of any of the Debtors."  11 U.S.C. §§ 362(a)(1) and (3).  On October 17, 1990, the bankruptcy judge augmented the protection afforded the Debtors by the automatic stay, employing the broad equitable powers available to bankruptcy judges under 11 U.S.C. § 105.  The bankruptcy judge issued an order staying all proceedings against Celotex, including those proceedings where "the matter is on appeal and a supersedeas bond has been posted by the Debtors."[1]

On May 3, 1991, the plaintiffs filed a motion in the district court seeking to enforce the supersedeas bond against Northbrook as surety on the bond.  *See* Fed.R.Civ.P. 65.1.[2]  Northbrook and Celotex opposed this motion, asserting that any proceeding to execute the bond was stayed by the Celotex bankruptcy.

However, let us be absolutely clear that the bankruptcy court's order does *not,* on its face, apply to the proceedings to execute the supersedeas bond against Northbrook.  A careful reading of the bankruptcy court's order reveals that it forbids all proceedings or claims involving the *debtor,* and makes no reference to proceedings against third parties.  Thus the section 105 stay would not, as written, prevent the district court from executing the bond against Northbrook.[3]

The district court entered the Bond Order on May 27, 1992 granting execution against

---

[1]*See* Order Granting Emergency Motion for Determination of Applicability of § 362 Stay to Pending Matters Or, in the Alternative, for Extension of § 362 Stay Pending Matters.  The pertinent section of this order reads: "3.  Notwithstanding any exceptions or limitations to the automatic stay contained in § 362(b) of the Code, all Entities are hereby jointly and severally stayed, restrained and enjoined from commencing or continuing any judicial, administrative or other proceeding involving any of the Debtors regardless of (a) who initiated the proceeding, (b) whether the matter is on appeal and a supersedeas bond has been posted by the Debtors or (c) the appellant in an appeal is one of the Debtors."

[2]Federal Rule of Civil Procedure 65.1 states, "Whenever these rules ... require or permit the giving of security by a party, and security is given in the form of a bond or stipulation or other undertaking with one or more sureties, each surety submits to the jurisdiction of the court and irrevocably appoints the clerk of the court as the surety's agent upon whom any papers affecting the surety's liability on the bond or undertaking may be served.  The surety's liability may be enforced on motion without the necessity of an independent action."

[3]As a relevant aside, we take note of the fact that the bankruptcy court in this case held that the stay as issued does apply to the proceedings in this case. *See In re Celotex Corp.,* 128 B.R. 478, 484 (Bankr.M.D.Fla.1991) ("[w]here bankruptcy courts in "mega' cases such as this are required to deal with complex litigation involving numerous parties, joint and several liability, and multi-million dollars in claims and assets, not to mention potential conflicts with other judicial determinations, the powers of the bankruptcy court under Section 105 must in the initial stage be absolute.")

Northbrook on the bond. Thereafter, Celotex filed its notice of appeal.

## II. Jurisdiction

The threshold question in this appeal is whether the district court had jurisdiction to determine the applicability of the bankruptcy court's stay. Celotex argues that the district court lacked jurisdiction to consider the plaintiffs' motion to execute the supersedeas bond because the bankruptcy court in Florida, where Celotex' Chapter 11 case is pending, has exclusive jurisdiction over all issues related to the bankruptcy. 28 U.S.C. § 1334(a) and (d). The difficulty underlying the determination of whether the district court had jurisdiction to hear the plaintiffs' motion is that this issue turns on the question of whether the bond is part of the Debtor's estate. However, this question is bound up in the merits of appellant's claim.

The jurisdictional grant of 28 U.S.C. § 1334(d) gives the bankruptcy court "exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case."[4] This jurisdictional grant is limited by section 1334(b) which provides that the bankruptcy court only has "original but not exclusive jurisdiction of all civil proceedings ... *related to* cases under title 11." 28 U.S.C. 1334(b) (emphasis added). Thus we can rephrase the first question presented in this appeal as follows: whether the district court's order implicates property of the estate and therefore falls under the exclusive jurisdiction of the bankruptcy court or instead is considered a merely a related matter over which the district court could properly exercise jurisdiction.

This court has previously held that district courts have jurisdiction to determine whether a bankruptcy court stay applies to proceedings before it. In *Hunt v. Bankers Trust Co.,* this court ruled that the issue of whether "the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law within the competence of both the court within which the litigation is pending ... and the bankruptcy court." 799 F.2d 1060, 1069 (5th Cir.1986) (citing *In re Baldwin-United Corp. Litigation,* 765 F.2d 343, 347 (2d Cir.1985)); *see also, Picco v. Global Marine Drilling Co.,* 900 F.2d 846, 850 (5th Cir.1990) (district courts retain jurisdiction to determine

---

[4]The bankruptcy courts sit under the auspices of the district court in the jurisdiction for which they operate. 28 U.S.C. § 157(a).

applicability of stay of litigation pending before them). The district court had jurisdiction to evaluate whether the motion to execute the supersedeas bond would fall under the exclusive jurisdiction of the bankruptcy court.

### III. Automatic Stay

We now turn to whether the automatic stay, 11 U.S.C. 362(a), prevents the district court from proceeding with the execution of the supersedeas bond. The automatic stay provisions of the Bankruptcy Code enable bankruptcy courts to take control of all of the assets of the debtor giving the court opportunity to survey the landscape of debtor's financial condition before reorganizing the estate. *Hunt v. Bankers Trust Co.,* 799 F.2d at 1069.

A victorious plaintiff who obtains a bare judgment against a defendant becomes an unsecured judgment creditor of that defendant. The judgment is payable immediately, but a defendant may obtain stay of execution on the judgment by posting a supersedeas bond. *See* Fed.R.Civ.P. 62(d). A defendant who posts a supersedeas bond retains a reversionary interest in the bond subject to divestment.

In many cases, the supersedeas bond will be posted by a third party. *See e.g. Southmark Corp. v. Riddle (In re Southmark Corp.)* 138 B.R. 820, 824-25 (Bankr.N.D.Tex.1992). In exchange for agreeing to post the supersedeas bond, the third party normally takes some sort of security from the judgment debtor. *Id.* In this case, Northbrook acted as surety on the bond securing its interest with insurance proceeds from Celotex' policy with Northbrook. *See In re Celotex Corp.,* 128 B.R. at 480.

Celotex argues that as the judgment debtor, it has an identity of interest with Northbrook as the surety of the supersedeas bond. Therefore, they reason that the bankruptcy court was justified in applying section 362 to stay any proceeding against Northbrook. Celotex cites the Fourth Circuit decision in *A.H. Robbins Co. v. Piccinin (In re A.H. Robbins)* in which the court held that " "there are cases [under 362(a)(1) ] where a bankruptcy court may properly stay the proceedings against non-bankrupt co-defendants'.... [This occurs] when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment

against the third-party defendant will in effect be a judgment or finding against the debtor." 788 F.2d 994, 999 (4th Cir.1986) *cert. denied* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986) (citing *Johns-Manville Sales Corp.,* 26 B.R. 405, 410 (Bankr.S.D.N.Y.1983)).

Celotex argues that because Northbrook received a security interest in the insurance proceeds, releasing the bond to the plaintiffs will allow Northbrook to automatically recover its rights to those proceeds. This result would diminish the total amount available to be paid out to the remaining claimants. Therefore, appellants ask us to allow the bankruptcy court to stay execution on the supersedeas bonds in order to preserve as much of the debtor's estate as possible.

The wording of section 362(a) belies Celotex' argument. The statute states that the automatic stay is applicable to "(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other action or proceeding against the debtor ... (3) any act to obtain possession of property of the estate." Thus the statute limits the bankruptcy court to stays in only those proceedings in which the debtor or his or her property is in controversy. Because this is suit against Northbrook, not the bankrupt, the only way the automatic stay could apply is if the court finds that the bond is property of the debtor's estate.

We recognize that the Bankruptcy Code defines property of the estate quite broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. 541(a)(1). *See U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). (holding that the definition of property of the estate includes property in which debtor no longer has a possessory interest). Nevertheless, we do not believe that this definition is so broad as to include the kind of interest under consideration in the present case.

In considering the same issue in a case involving another asbestos claimant to the Celotex estate, the court in *Willis v. Celotex Corp.* rejected Celotex' reasoning, stating that the guarantor has a duty "separate from and independent of Celotex' duty to pay the judgments." 978 F.2d 146, 148 (4th Cir.1992) *cert. denied* --- U.S. ----, 113 S.Ct. 1846, 123 L.Ed.2d 470 (1993). Because there was no identity of interest between Celotex and its guarantor, the proceedings against the guarantor of the supersedeas bond were not stayed under § 362(a)(1). *Id.* at 149. The obligations of a surety

are sufficiently independent to provide the basis of an action by the judgment creditor to collect on the bond unfettered by the automatic stay provisions of the Bankruptcy Code.

In an analogous case this court decided that any payments made under a secured letter of credit do not constitute property of the debtor. *Kellogg v. Blue Quail Energy Inc. (In re Compton Corp.)* 831 F.2d 586, 589 (5th Cir.1987), *modified on other grounds,* 835 F.2d 584 (1988) ("When the issuer honors a proper draft under a letter of credit, it does so from its own assets and not from the assets of [the debtor] who caused the letter of credit to be issued."). Because the letter of credit is not part of the Debtor's estate, we ruled that the bankruptcy court could not enjoin a payment of funds from the letter of credit to the beneficiary. *Id.* This court reasoned that central to the letter of credit is the independence principle in which the "issuers obligation to the letter of credit beneficiary is independent from any obligation between the beneficiary and the issuer's customer." *Id.* at 590.

The concerns which the court considered relevant to the letter of credit are similarly relevant to the surety-debtor relation at issue here. *In re Southmark,* 138 B.R. at 828 ("the supersedeas bond or undertaking on appeal resembles the secured letter of credit"). The promise of the bank to pay on a letter of credit is indistinguishable from Northbrook's promise to act as surety on the supersedeas bond. In both cases the promise is to perform an obligation of the debtor when and if the debtor becomes unable to do so itself. The surety's obligation on a supersedeas bond once the appeal has been completed is as separate and independent from the principal's obligation, as is the bank's obligation on a letter of credit. Thus the automatic stay provisions of § 362(a) do not apply to the guarantor of a supersedeas bond because the bond is not property of the bankrupt's estate once the bond has matured and become enforceable. It was therefore proper for the district court to allow the judgment plaintiffs to execute the supersedeas bond against the surety as a separate and independent obligor on the debt.

The bankruptcy court holding jurisdiction over Celotex' bankruptcy itself admitted that "[w]here a debtor, upon the filing of the bankruptcy petition, is an unsuccessful appellant in the total appellate process, or during the bankruptcy case is unsuccessful in its appeal, its property interest in the bond can be divested and any efforts by the debtor to prevent the judgment creditor from

proceeding against the supersedeas bond must be sought under Section 105 of the Bankruptcy code." *In re Celotex Corp.,* 128 B.R. at 482. In this case, because the appeal has been completed and mandate issued, the claim Celotex may have once had on the supersedeas bond has thereby terminated.

This opinion should not be read to infer that the bankruptcy court lacked authority to issue a stay order over supersedeas bonds generally. Our decision today is limited to the holding that the bankruptcy court lacked authority over this particular supersedeas bond. Because the appellate process had been completed and Celotex no longer had an interest, reversionary or otherwise, in this particular supersedeas bond the automatic stay provisions will not prevent Northbrook from fulfilling its obligation.

While we need not state the precise reach of § 362(a) to third parties, we hold that the automatic stay cannot be invoked to paralyze judgment creditors from pursuing the surety of a supersedeas bond once the debtor has lost the appeal for which the bond was posted.

IV. Section 105 Stay

Turning now to the more difficult issue raised by this appeal, we confront the question of whether the equitable powers granted bankruptcy courts apply to the type of non-debtor third parties present here.

Celotex argues that section 105 of the Bankruptcy Code gives bankruptcy courts virtually limitless ability to bring parties to heel to its authority. Section 105(a) states, in part, that the bankruptcy "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." In *In re S.I. Acquisition, Inc.* this court recognized that a bankruptcy court has broad discretionary power under section 105 to affirmatively stay proceedings in other courts. 817 F.2d 1142, 1146 n. 3 (5th Cir.1987); *Wedgeworth v. Fibreboard Corp.* 706 F.2d 541, 545 (5th Cir.1983).

The jurisdiction of bankruptcy courts has been extended to include stays on proceedings involving third parties under the auspices of 28 U.S.C. § 1334(b) which provides for jurisdiction of

the bankruptcy court for matters "related to a case under title 11."[5]  Appellant argues that under this jurisdictional grant, the equitable powers of the bankruptcy court are sufficient to stay a proceeding to release the supersedeas bond.

The Fourth Circuit in *Willis,* examining the very same section 105(a) order at issue in this case, decided that the bankruptcy court's power was sufficient to stay proceedings against third parties on supersedeas bonds.  The court based its reasoning upon the "magnitude of the task [the bankruptcy court] faced in attempting to oversee the bankruptcy proceedings, resulting from the sheer number of pending personal injury cases in which supersedeas bonds had been posted."  978 F.2d at 149.  The number of cases against Celotex is, in fact, quite staggering.  Over 141,000 asbestos related bodily injury claims were pending against the debtor Celotex at the time it filed for bankruptcy.  *In re Celotex Corp.,* 128 B.R. at 480.  Of those, over 100 cases had appeals pending, in support of which Celotex claims to have posted over $70 million in supersedeas bonds.  *Id.*  In light of the "extraordinary facts presented by the Celotex bankruptcy" 978 F.2d at 147, the *Willis* court concluded that a stay of proceedings to prevent enforcement of supersedeas bonds was a proper exercise of the bankruptcy court's authority under section 105(a).

It is important to remember that the section 105 stay issued by the bankruptcy court does not, on its face, reach to third parties.  Thus, taking the bankruptcy court at its word, we are unable to see how the section 105 order could reasonably be applied to the present proceedings which involve a separate and independent third party obligation.  The bankruptcy court stay was written to apply only to the debtor and its property.  As we have shown in the preceding section, the property of the debtor cannot be extended to include the separate obligations of a non-bankrupt surety.  Our decision in *Blue Quail* is particularly relevant as to the separateness of guaranty obligations from the property of a debtor's estate.

However, this court has at times found it appropriate to broadly construe bankruptcy court

---

[5]In considering the question of whether co-defendants are included within a § 105 stay, this court held that § 105 "does empower the bankruptcy court to stay proceedings against non-bankrupt entities."  *In re S.I. Acquisition,* 817 F.2d at 1146 n. 3.  *See also MacArthur Co. v. Johns-Manville Corp.,* 837 F.2d 89, 93 (2nd Cir.1988) (section 105 allows stays against third party insurers).

stays to apply beyond the property of the debtor. *In re Davis,* 730 F.2d 176, 183 (5th Cir.1984) (exercising the bankruptcy court's stay powers against non-debtor third parties when the proceedings in question "pose a significant threat to the estate.") Indeed, the bankruptcy court in this case has ruled that the stay, in its present state, would apply to enjoin the Edward's proceedings against Northbrook to execute the supersedeas bond. *In re Celotex Corp.,* 128 B.R. at 484. The court has decided that even when, "the judgment creditor has been successful throughout the appellate process, the judgment creditor is not able to proceed against the supersedeas bond without seeking to vacate the section 105 stay in this Court." *Id.*

Therefore, we cannot simply assume that because Northbrook does not appear to be included on the face of the stay, the bankruptcy court will exempt it from the reach of the stay. The issue presented in this appeal must then be sharpened to the question of whether prudential (or other) considerations justify extending the bankruptcy court's jurisdiction to the point where it includes the power to stay the proceedings in question here.

The Supreme Court has made clear the importance of placing definite limits on the equity powers of bankruptcy courts. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 80-81, 102 S.Ct. 2858, 2876, 73 L.Ed.2d 598 (1982) (plurality opinion) (holding that because bankruptcy courts are non-Article III courts they must be limited in function and authority). This court has itself previously limited the powers of bankruptcy courts in *Wedgeworth v. Fibreboard Corp.* where we held that, "[a]lthough we recognize the court's broad discretion in this area, such control is not unbounded. Proper use of this authority calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.' " 706 F.2d at 545 (citing *Landis v. North American Co.,* 299 U.S. 248, 254-55, 57 S.Ct. 163, 165-6, 81 L.Ed. 153 (1936)).

While we recognize the burdens which have been placed upon the bankruptcy court by the immensity of litigation pending in this case, we disagree with the Fourth Circuit's proposed solution in *Willis.* We believe that we cannot afford to shut down the dispensation of justice simply because

there is a bankruptcy.[6]  Although the idea of using the bankruptcy court as a clearing house for all of these cases may seem desirable as a policy matter, section 105(a) simply does not give bankruptcy courts authority over assets that are not property of the debtor's estate and in which the debtor has no interest.  We cannot globalize the bankruptcy court's authority in this manner.

Celotex made a promise to the prevailing plaintiffs (and the court) by posting the supersedeas bond that the bond would "secure[ ] the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal." *Poplar Grove Planting and Refining Co., v. Bache Halsey Stuart, Inc.,* 600 F.2d 1189, 1191 (5th Cir.1979); *Federal Prescription Service, Inc. v. American Pharmaceutical Association* 636 F.2d 755 (D.C.Cir.1980) (describing the purpose of supersedeas bond to secure appellee in cases where there is some chance of the judgment debtor being unable or unwilling to satisfy the judgment). Supersedeas bonds serve as an obligation on an appellant to insure that an appellee who is deprived of the immediate opportunity to collect his or her judgment will not be prejudiced by the delay.

Allowing appellant to file for bankruptcy and stay of execution on the supersedeas bond would eviscerate the very purpose of these bonds.  Once the appeal is decided and mandate has issued, the judgment creditor has an enforceable right to collect that which the trial court has previously determined is rightfully his or her own.  The supersedeas bond was posted to cover precisely the type of eventuality which occurred in this case, insolvency of the judgment debtor.  It is manifestly unfair to force the judgment creditor to delay the right to collect with a promise to protect the judgment only to later refuse to allow that successful plaintiff to execute the bond because the debtor has sought protection under the laws of bankruptcy.

Furthermore, this argument is buttressed by the fact that it is the purpose of the surety relation to provide creditors with another avenue to pursue the debt.  Becoming the surety on the supersedeas bond, Northbrook took the place of the judgment creditor in bearing the risk that Celotex would be unable to pay the debt. *See Blue Quail,* 831 F.2d at 589-90. (holding that for letters of credit, "the

---

[6]The court in *Willis* expressed the hope that the bankruptcy court will quickly rule on the motion for relief from the stay.  978 F.2d at 149 n. 5.  At this point, aspirations for an expeditious resolution appear quixotic at best.

shifting of liability to the bank rather than to the [creditor] is the main purpose of the letter of credit. After all, the bank is in a much better position to assess the risk of its customer's insolvency."). If we permit Northbrook to escape its liability by taking refuge under the protective umbrella of Celotex' Title 11 bankruptcy proceedings, we would thereby doubly disappoint the Edwards plaintiffs by first delaying their judgment under a supersedeas bond which they can no longer execute *and* then, second, failing to enforce the promise made by Northbrook to guarantee that bond. We should not, unless absolutely compelled, let such an unjust result stand. There are no such compulsions here.

Section 105 authorizes a bankruptcy court to enjoin litigants from pursuing actions pending in other courts that threaten the integrity of a bankrupt's estate. *In re Davis,* 730 F.2d at 184. However, the integrity of the estate is not implicated in the present case because the debtor has no present or future interest in this supersedeas bond.[7] Whatever the ultimate scope of section 105, it does not extend so far as to give the bankruptcy court authority over a supersedeas bond in which the debtor has no interest. Because the appeal has terminated and mandate issued, the surety's liability on the bond matured and the judgment creditors should be allowed to collect.

In coming to the opposite conclusion from the decision we reach today, the *Willis* court held that the "hiatus from execution on the bonds was necessary to permit the bankruptcy court to take control of the immense litigation." 978 F.2d at 150. The idea of hiatus employed by the Fourth Circuit parallels the intent Congress manifested in providing equitable powers to the bankruptcy court in the first place. The power to stay proceedings in other courts was intended as a provisional measure to afford "the debtor a breathing spell from his creditors. It stops all collection efforts, all

---

[7]The status of the surety agreement which allegedly gives Northbrook a collateralized interest in insurance proceeds due to the debtor Celotex is not sufficiently demonstrated to suggest that Northbrook and Celotex indeed have an identity of interest such that executing against Northbrook would be the same as proceeding against the property of the debtor. In this respect, the bankruptcy court was correct when it held that "whether a debtor can reject or assume the surety agreement or avoid it and thus seek return of the collateral may be an issue solely between the debtor and its surety. *In re Celotex,* 128 B.R. 481.

In addition, we lack evidence of the effect of the agreement between Celotex and Northbrook other than generalized statements by Celotex unrelated to the situation of these plaintiffs. We cannot base a decision on a document that was not presented to the court.

harassment, and all foreclosure actions." 1978 U.S.C.C.A.N. at 6296-97. In order that this breathing spell not suffocate the creditor's claims, we must take care to insure that the hiatus not extend to the point where it becomes a permanent vacation.

In this case, the judge granted the original stay almost three years ago. The complexities of this litigation make it likely that a satisfactory and fair dispensation of Celotex' assets will be a long time coming. We cannot allow the concern for resolving the monstrous tangle of conflict and contradiction to overwhelm our duty to do justice to these plaintiffs. Due to the likelihood of any stay becoming a perpetual prohibition on plaintiffs collecting their judgment, we hold that the stay is not within the equitable powers of the bankruptcy court for the situation at bar.

These plaintiffs have survived many long years fighting through the system. On October 12, 1990, they emerged with what appeared to be a final victory in this protracted litigation. Greeting them was Celotex, postponing the plaintiff's relief with the claim that because there are so many other victims of this terrible poison, the Edwards will have to postpone yet again the day in which they receive what is their due. It is our job to see that they wait no longer. The Edwards were specifically promised by the court and by Celotex that they could look to the supersedeas bonds if they won on appeal and we should be careful to see that their expectations are not nullified because of a generalized and theoretical concern for the bankrupt's estate.

We conclude by calling attention one last time to the fact that this circuit in *Blue Quail* did not bow in complete obeisance to a bankruptcy court stay. Fairness and equity require that we also not bow in this case where the Edwards' claim is all the more compelling. Having completed the appellate process before the debtor went into bankruptcy, the supersedeas bond matured, and the district court acted properly in executing the bond against Northbrook.

V.

For the reasons stated above, we AFFIRM.

EDITH H. JONES, Circuit Judge, specially concurring:

I agree wholeheartedly with Judge Goldberg's analysis showing the inapplicability of the § 362 stay to this case and with his interpretation of the plain meaning of the Celotex bankruptcy court's §

105 stay order. Because the § 105 stay order did not purport to reach the di strict court's order against Northbrook in this case, however, I would not reach the question of the bankruptcy court's power to issue such an order.