### In re PURIFINER DISTRIBUTION CORPORATION, Debtor.

**Bankruptcy No. 94–05637–8G1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 11, 1995.

## ORDER ON MOTION OF T/F SYSTEMS, INC. FOR RELIEF FROM AUTOMATIC STAY

### (Supersedeas Bond)

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came on for consideration on the Motion of T/F Systems, Inc. for Relief from Automatic Stay pursuant to § 362(d)(1) of the Bankruptcy Code. T/F Systems, Inc. ("T/F" or "Movant") requests that the automatic stay imposed by 11 U.S.C. § 362(a) be lifted to clarify that the Movant is permitted to execute on a civil supersedeas bond to the extent of the monetary obligations of Purifiner Distribution Corporation (the "Debtor" or "Purifiner") to the Movant as determined in a state court action and to the extent of the amounts remaining under the supersedeas bond. In opposition to the motion, the Debtor claims that the supersedeas bond is property of the estate and should be protected by the automatic stay, and that no cause exists to lift the stay pursuant to § 362(d)(1).

In 1990, T/F filed a state court action against the Debtor, Southeast Capital Financing, Inc. ("Southeast"), Fu Sheng Industrial Co., Ltd. ("Fu Sheng"), and Robert Malt ("Malt"),[1] seeking a declaration that, as a result of certain agreements between T/F, the Debtor, and Refineco Manufacturing Co., Inc., it had obtained the exclusive worldwide manufacturing and marketing rights to products with the "Purifiner" trademark.[2] T/F also sought damages against the Debtor and Southeast for the breach of one of the agreements.

A Final Judgment was entered on September 16, 1991, generally in favor of T/F on both its request for declaratory judgment and its claim for money damages. The Debtor, Southeast, and Fu Sheng appealed the Final Judgment and Malt cross-appealed. The state court entered an order setting a

Richard A. Zeller, Clearwater, FL, Brent A. Rose, Orsini & Rose, P.A., Clearwater, FL, for debtor.

Thomas Mimms, Jr., Tampa, FL, Ernest J. Marquart, Shumake, Loop & Kendrick, Barnett Plaza, Tampa, FL, for movant.

1. *T/F Systems, Inc. v. Southeast Capital Financing, Inc., et al.,* Civil Case No. CL 90–123772 AE, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

2. "Purifiner" products are on-board oil refining products which extend the life of engine oil, used primarily in motor vehicles but also having marine applications.

supersedeas bond at $1,000,000.00. On appeal, the Final Judgment was affirmed as to T/F, but reversed and remanded with instructions to order the Debtor to account to Malt for the products manufactured and sold in violation of Malt's rights and to pay Malt a 5% royalty on such products. The appellate court issued its mandate on May 14, 1992. T/F moved for execution on the portion of the Final Judgment awarding it money damages. T/F also alleged that the Debtor had continued to manufacture and market "Purifiner" products during the appellate period and requested a non-jury trial to determine the amount of its damages due to the delay caused by the appeal. The state court allowed T/F to execute on the money judgment portion of the Final Judgment ($159,515.11 plus interest) by collecting from the supersedeas bond. The state court further determined that it had retained jurisdiction to determine the delay damages, if any, due T/F and also due the cross claimant, Malt. The issues of delay damages owed to T/F and to Malt were tried without a jury before the state court on May 16–18, 1994. On June 9, 1994, after the trial but before the state court had entered its judgment, the Debtor filed its Voluntary Petition.

This Court has previously modified the automatic stay of 11 U.S.C. § 362 [3] to permit the state court to enter a final judgment or order resulting from the trial for delay damages and for any appeals of that decision. On December 22, 1994, the state court entered an Order and Final Judgment on Mo-

tion to Determine Delay Damages, awarding T/F a total of $12,476,694.43, and awarding Malt a total of $421,382.15. Both the award to T/F and the award to Malt are against Southeast, Purifiner, and Fu Sheng, jointly and severally. Southeast, Purifiner, and Fu Sheng have filed motions for a new trial or, alternatively, motions for rehearing. The state trial court denied these motions, and Southeast, Purifiner, and Fu Sheng have appealed.

Under consideration in this order is whether this Court should, or needs to, modify the stay of § 362 to allow the Movant to proceed against the supersedeas bond to the extent of the Debtor's monetary obligations as established by the state court and to the extent of the amounts remaining under the supersedeas bond.

 In the Florida state courts, the term supersedeas means a stay.[4] A supersedeas or stay is preventive in nature, and maintains the status quo pending appellate proceedings. A stay pending review of a final order may be conditioned on the posting of a good and sufficient bond, other conditions, or both.[5] A good and sufficient bond is (1) a bond with a principal and surety company authorized to do business in the State of Florida, or (2) cash deposited in the circuit court clerk's office.[6] The conditions of a bond must include a condition to pay or comply with the order in full, including costs, interest, fees, and damages for delay, use, detention, and depreciation of property, if the

---

**3.** 11 U.S.C. § 362 is § 362 of the Bankruptcy Code. Further reference to sections of the Bankruptcy Code will be by section only.

**4.** Under the former Florida Appellate Rules, the word "supersedeas" was used, apparently interchangeably, with the word "stay". The current Florida Rules of Appellate Procedure make no use of the term and no reference to supersedeas, but refer to a stay pending review. See 3 Fla. Jur.2d Appellate Review § 134. A supersedeas may be defined as either a suspension of the power of the trial court to issue an execution on a judgment from which an appeal has been taken, or if execution has issued, a prohibition emanating from the appellate court against further proceedings under the execution. Pan American

Surety Company v. St. Ana, 105 So.2d 500 (Fla.3d Dist.Ct.App.1958). Any act, judgment, or proceeding that of its own force and effect produces a suspension or stay or proceedings in a cause is a supersedeas. Kahn v. American Surety Co. of New York, 120 Fla. 50, 162 So. 335 (Fla.1935), overruled on other grounds, Larson v. Higginbotham, 66 So.2d 40 (Fla.1953).

**5.** Rule 9.310(a), Florida Rules of Appellate Procedure.

**6.** Rule 9.310(c)(1), Florida Rules of Appellate Procedure.

review is dismissed or order affirmed.[7] A surety on a bond conditioning a stay submits to the jurisdiction of the lower tribunal and the appellate court.[8] The liability of the surety on such bond may be enforced by the lower tribunal or the appellate court, after motion and notice, without the necessity of an independent action.[9] A stay entered by a lower tribunal shall remain in effect during the pendency of all review proceedings in Florida courts until a mandate issues, or unless otherwise modified or vacated.[10]

Required substantive provisions and the form of the supersedeas bond with a principal and a surety are specified by Rule 9.900(h), Florida Rules of Appellate Procedure. The bond must provide:

.... (Title of Court)....
Case No. _____

| | |
|---|---|
| _____,<br>Plaintiff, | ) ) ) |
| v. | ) CIVIL SUPERSEDEAS BOND ) |
| _____,<br>Defendant. | ) ) ) ) |

_____

We, _____ as Principal, and _____ as Surety, are held and firmly bound unto _____ in the principal sum of $_____, for the payment of which we bind ourselves, our heirs, personal representatives, successors, and assigns, jointly and severally.

The condition of this obligation is: the above-named Principal has entered an appeal to the (court) to review the (judgment or order) entered in the above case on (date) , and filed in the records of said court in book ____ at page ____.

NOW THEREFORE, if the Principal shall satisfy any money judgment contained in the judgment in full, including, if allowed by law, costs, interest, and attorneys' fees, and damages for delay in the event said appeal is dismissed or said judgment is affirmed, then this obligation shall be null and void; otherwise to remain in full force and effect.

Signed on (date) , at (place) .
/s/_____
Principal
Signed on (date) , at (place) .
/s/_____
Surety

Pursuant to these terms, if the principal satisfies any money judgment contained in the judgment in full, including, if allowed by law, costs, interest, and attorneys' fees, and damages for delay in the event the appeal is dismissed or the judgment is affirmed, the bond is void. If the principal does not satisfy the judgment and other specified items, the bond remains in force. The surety submits to the jurisdiction of the lower tribunal and the appellate court, and the liability of the surety may be enforced by either the lower tribunal or the appellate court.

■ The liability of the surety is contractual, *see All Florida Surety Company v. Vann,* 128 So.2d 768 (Fla.3d Dist.Ct.App. 1961), and is a direct liability of the surety, *see Archibald v. Donald,* 98 Fla. 698, 124 So. 175 (1929).

As its supersedeas bond in the state court, the Debtor did not deposit cash with the circuit court clerk, but it posted a bond with

---

7. Rule 9.310(c)(2), Florida Rules of Appellate Procedure.

8. Rule 9.310(d), Florida Rules of Appellate Procedure.

9. Rule 9.310(d), Florida Rules of Appellate Procedure.

10. Rule 9.310(e), Florida Rules of Appellate Procedure.

the Debtor as a principal and American Bankers Insurance Company as surety. The Debtor's parent corporation, Majority Holdings, Inc., also a Chapter 11 debtor in this court, placed collateral with the surety.

Section 362 provides that a petition filed under § 301 operates as a stay, applicable to all entities, of, among other things: (1) the continuation of a judicial action against the debtor,[11] and (2) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

The Debtor asserts that the supersedeas bond is property of the estate, that T/F would need relief from the stay of § 362 to obtain possession of such property, and that no cause exists for such relief from the stay.

■ If the bond were a deposit of cash, such cash might constitute property of the estate. A leading case analyzing cash bonds is *Mid–Jersey National Bank v. Fidelity–Mortgage Investors*, 518 F.2d 640 (3d Cir. 1975), a pre-code case with principles nevertheless applicable. *Mid–Jersey* indicates that a cash bond is a deposit in custodia legis, and not property of the estate. The bankruptcy court in the case of *In re Celotex*, 128 B.R. 478 (Bankr.M.D.Fla.1991), raises questions regarding this conclusion by indicating that the debtor would have at least an interest (either legal or equitable) in such cash, which interest would be property of the estate subject to divestment if the appellant is not successful on appeal.[12] Both positions would have similar practical results in a case

such as this, where the debtor was not successful on appeal and the amount of the bond is less than the amount of the debtor's ultimate liability as appellant. In this case, however, the bond was not a cash deposit, so the Court mentions this only to demonstrate that the analysis whether a debtor has a property interest in a supersedeas bond may differ depending on whether the bond is a cash bond or a bond with a principal and a surety.

■ In the case at issue, the supersedeas bond is a bond with the Debtor as a principal and an insurance company as surety. Clearly, any act to enforce the liability of the principal against the Debtor would be stayed by § 362. The question here is whether an act to enforce the liability of the surety on the bond is stayed by § 362. As previously noted, in the Florida state courts the surety enters a separate, direct undertaking, and submits to the jurisdiction of the courts. An act to enforce the liability of surety is an act to obtain property of the surety from the surety, not property of the estate from the estate. Such an act is not stayed by § 362(a)(3).

■ Moreover, in the case at issue, the appeal has been concluded and the mandate issued. The second trial was to determine the damages resulting from the delay caused by the appeal. Even under cases holding that a supersedeas bond is property of the estate, any property interest of the Debtor in the bond terminates when the successful appellee has the right to proceed against the

---

**11.** This Court has already modified the stay of § 362(a)(1) to allow the continuation of the judicial action against the Debtor that was commenced before the commencement of the case because, essentially, that action had already been tried and appealed, and was final, and a subsequent trial had been held to determine the damages caused by the delay of the appeal (the payment of damages for delay in the event the judgment is affirmed is a condition of the supersedeas bond). Although the delay damage trial had been held, the trial court had not rendered its judgment, and this Court modified the stay of § 362 to allow the trial court to render this

judgment and to allow any appeals of that determination.

**12.** In view of the expansive definition of property of the estate included in the Bankruptcy Code, the Third Circuit has indicated that it might revisit its conclusion. "However, we find it unnecessary to decide whether the Code has superseded *Mid–Jersey's* definition of property of the estate, because we believe § 362(a)(1) stays pending proceedings brought directly against the debtor, regardless of whether they involve property of the estate." *Borman v. Raymark Industries, Inc.*, 946 F.2d 1031 (3d Cir.1991).

bond.[13] Accordingly, even if the supersedeas bond were property of the estate, such property interest terminates when the appeal is concluded and the appellee has the right to proceed against the bond.

The conclusions of this order are consistent with the conclusions of Circuit Courts of Appeals considering supersedeas bonds in Federal courts. The Fourth Circuit Court of Appeals states:

> The terms of the supersedeas bond impose a duty on Aetna separate from and independent of Celotex's duty to pay the judgments. Aetna does not hold an identity of interest with Celotex. ... Proceedings against Aetna as surety on the supersedeas bond, therefore, were not stayed under § 362(a)(1).

This Court has not previously addressed whether a supersedeas bond is an asset of the bankruptcy estate. While there is considerable disagreement concerning this issue, see In re Southmark Corp., 138 B.R. [820,] at 827–28 [ (Bankr.N.D.Tex.1992) ]; compare Mid–Jersey National Bank, 518 F.2d at 643–44 with Borman v. Raymark Industries, Inc., 946 F.2d 1031, 1032–36 (3rd Cir.1991), we need not address this question. Assuming a supersedeas bond is an asset of the Bankruptcy estate during the pendency of an appeal, here the appeal was decided unfavorably to Celotex and our mandate issued prior to Celotex's bankruptcy filing, thus extinguishing any interest Celotex may have had in the bond. Accordingly, proceedings against the bond were not proceedings "to obtain possession of property of the estate" and were not stayed by § 362(a)(3).

Willis v. The Celotex Corporation, 978 F.2d 146 (4th Cir.1992).

The Fifth Circuit Court of Appeals states:

> ... Thus the statute limits the bankruptcy court to stays in only those proceedings in which the debtor or his or her property is in controversy. Because this is suit against Northbrook, not the bankrupt, the only way the automatic stay could apply is if the Court finds that the bond is property of the debtor's estate.
>
> We recognize that the Bankruptcy Code defines property of the estate quite broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. 541(a)(1) see U.S. v. Whiting Pools, Inc., 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983) (holding that the definition of property of the estate includes property in which the debtor no longer has a possessory interest). Nevertheless, we do not believe that this definition is so broad as to include the kind of interest under consideration in the present case.
>
> In considering the same issue in a case involving another asbestos claimant to the Celotex estate, the Court in Willis v. Celotex Corp. rejected Celotex's reasoning, stating that the guarantor has a duty "separate from and independent of Celotex's duty to pay the judgments." 978 F.2d 146, 148 (4th Cir.1992) cert. denied —— U.S. ——, 113 S.Ct. 1846, 123 L.Ed.2d 470 (1993). Because there was no identity of interest between Celotex and its guarantor, the proceedings against the guarantor of the supersedeas bond were not stayed under § 362(a)(1). Id. at 149. The obligations of a surety are sufficiently independent to provide the basis of an action by the judgment creditor to collect on the bond unfettered by the automatic stay provisions of the Bankruptcy Code.

Edwards v. Armstrong World Industries, Inc., 6 F.3d 312 (5th Cir.1993).

The Seventh Circuit Court of Appeals states:

> ... The supersedeas bond merely gives the judgment creditor another creditor to

---

13. "If at the time of filing the petition the appellate process has not been completed, the debtor still has an interest in the supersedeas bond cognizable under § 541 of the Bankruptcy Code subject to the interest being divested if the debtor is unsuccessful once the appellate process is complete." In re Celotex, 128 B.R. at 482.

go after—the insurance company—once execution of the judgment is possible. It is not a release of the judgment debtor. Munford remains fully liable: it is just that INA is liable too.

*Sheldon v. Munford, Inc.,* 902 F.2d 7 (7th Cir.1990).

The Ninth Circuit Court of Appeals states as follows with respect to contractor's license bonds:

O'Malley also correctly asserts, however, that the "overwhelming weight of authority" under both the Bankruptcy Act and Code holds that a contractor has no property interest in a surety bond issued by a third-party to guaranty the contractor's performance on its commercial or personal service contracts. ...

Lockard relies on a single recent Bankruptcy Court case, *In re Legend Homes, Inc.,* 69 B.R. 797 (D.Ariz.1987), to support his argument that the bond at issue in this case is "property of the estate." In that case, the court decided only that cash deposited by a contractor with the Arizona Registrar of Contractors, pursuant to Ariz. Rev.Stat.Ann. § 32–1152, is "property of the estate" within the meaning of 11 U.S.C. § 541 *Id.* at 799–800. Lockard contends that there is no meaningful distinction between a cash deposit made by a contractor, and a licensed bond executed by a third-party surety and a contractor, for purposes of § 541.

As the court in In re Legend Homes itself observed, however, the Ninth Circuit recognizes such a distinction. ...

As O'Malley contends, there are cogent reasons for retaining the cash deposit/surety bond distinction for purposes of Bankruptcy Law. In the case of a cash deposit, the contractor puts up his own property to guaranty his performance on commercial or personal service contracts. By contrast, a contractor who instead posts a bond interposes a third-party surety between himself and contract claimants; the surety essentially agrees, in exchange for the con-

tractor's promise of indemnification or, as here, a lien on the contractor's assets, to pay the claims of contract creditors out of the surety's own funds in an aggregate amount up to the limits of the bond in the event of the contractor's breach.

The basic difference is in the party, the contractor or the surety, who puts its property directly at risk of liability to creditors in the event of non-payment by the contractor. ...

In keeping with the prevailing authority, we conclude that the surety bond at issue in this case is not "property of the estate," within the meaning of 11 U.S.C. § 541. O'Malley's state court action against Allied is not, therefore, subject to the automatic stay of 11 U.S.C. § 362(a)(3).

*In re Lockard, O'Malley Lumber Company v. Lockard,* 884 F.2d 1171 (9th Cir.1989).

As the Fifth Circuit Court of Appeals points out in *Edwards, infra,* this result is analogous to the result when considering letters of credit:

In an analogous case this court decided that any payments made under a secured letter of credit do not constitute property of the debtor. ...

The concerns which the court considered relevant to the letter of credit are similarly relevant to the surety-debtor relation at issue here. ... The promise of the bank to pay on a letter of credit is indistinguishable from Northbrook's promise to act as surety on the supersedeas bond. In both cases the promise is to perform an obligation of the debtor when and if the debtor becomes unable to do so itself. The surety's obligation on a supersedeas bond once the appeal has been completed is as separate and independent from the principal's obligation, as is the bank's obligation on a letter of credit. Thus the automatic stay provisions of § 362(a) do not apply to the guarantor of a supersedeas bond because the bond is not property of the bankrupt's estate once the bond has matured and become enforceable.

*Edwards v. Armstrong World Industries, Inc.,* 6 F.3d at 317.

The Fifth Circuit Court of Appeals also discussed the purpose of supersedeas bonds:

... Supersedeas bonds serve as an obligation on an appellant to insure that an appellee who is deprived of the immediate opportunity to collect his or her judgment will not be prejudiced by the delay.

Allowing appellant to file for bankruptcy and thereby stay execution on the supersedeas bond would eviscerate the very purpose of these bonds. Once the appeal is decided and mandate has issued, the judgment creditor has an enforceable right to collect that which the trial court has previously determined is rightfully his or her own. The supersedeas bond was posted to cover precisely the type of eventually which occurred in this case, insolvency of the judgment debtor. It is manifestly unfair to force the judgment creditor to delay the right to collect with a promise to protect the judgment only to later refuse to allow that successful plaintiff to execute the bond because the debtor has sought protection under the laws of bankruptcy.

Furthermore, this argument is buttressed by the fact that it is the purpose of the surety relation to provide creditors with another avenue to pursue the debt. Becoming the surety on the supersedeas bond, Northbrook took the place of the judgment creditor in bearing the risk that Celotex would be unable to pay the debt.

*Edwards v. Armstrong World Industries, Inc.,* 6 F.3d at 319.

This result is not inconsistent with the case of *In re Celotex, infra.* In that case, the court was faced with over 141,000 asbestos related bodily injury cases pending against the debtor in almost every state and federal jurisdiction, and over 100 asbestos bodily injury cases on appeal with judgments totaling nearly $70 million dollars being stayed by supersedeas bonds. The court was dealing with both cash deposits and surety contracts. Its analysis of cash deposits is straightforward, and is described above. With respect to the bonds with sureties, the court concluded that the supersedeas bonds, while distinct, were interconnected with the surety agreements between the debtor and the sureties, and with the collateral securing the bonds, which latter two were clearly property of the estate. The court indicated that while these may not add any greater status to the bond as property of the estate, they were of concern to the reorganization process with which the court was faced. The court stated that any interest of the estate in the supersedeas bonds is subject to being divested if the debtor is unsuccessful on appeal, and that any efforts by the debtor to prevent the judgment creditor from proceeding against the supersedeas bond must be sought under § 105 of the Bankruptcy Code. The court then imposed a stay pursuant to the equitable powers of the court contained in § 105.

No stay pursuant to § 105 has been requested or imposed in this case.

The Debtor indicates that the effect of bankruptcy on a supersedeas bond will be decided by the United States Supreme Court in the *Edwards* case, since the Supreme Court has granted a petition for writ of certiorari in that case. *See Celotex Corporation v. Edwards,* — U.S. —, 114 S.Ct. 2099, 128 L.Ed.2d 661 (1994). A review of the question to be considered by the Supreme Court indicates that the Court may or may not deal with the status of a supersedeas bond as property of the estate. The actual question certified indicates that the Supreme Court will consider whether a bond may be enforced against the non-bankrupt surety "even though a bankruptcy court in another circuit has attempted to restrain execution on supersedeas bonds posted in favor of the Debtor under § 105(a) of the Bankruptcy Code." *Id.* This may or may not result in a determination of the status of a supersedeas bond as property of the estate.

In summary, in this case the obligation of the surety on the supersedeas bond is an independent undertaking, and may be enforced directly against the surety to recover

property of the surety. Such action is not stayed by § 362 of the Bankruptcy Code. Even if the bond were property of the estate, the estate's property interest terminates upon the Debtor being unsuccessful in the appeal and the appellee having the right in the state court to proceed against the surety.

Accordingly,

**IT IS ORDERED** that:

1. The stay of 11 U.S.C. § 362 shall not stay T/F Systems, Inc. from enforcing the liability of the surety on the supersedeas bond in the case of *T/F Systems, Inc. v. Southeast Capital Financing, Inc., et al.,* Civil Case No. CL 90–123772 AE, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

2. The stay of 11 U.S.C. § 362 shall remain in effect in all other respects, except as previously modified, and shall stay any act to enforce the judgment or collect the judgment from Purifiner Distribution Corporation.