**In re DUPLITRONICS, INC., an Illinois corporation, Debtor.**

**DUPLITRONICS, INC., Plaintiff,**

**v.**

**CONCEPT DESIGN ELECTRONICS AND MANUFACTURING, INC., The Hanover Insurance Company, Massachusetts Bay Insurance Company, and LaSalle National Bank, Defendants.**

**Bankruptcy Nos. 95 B 11220, 95 A 00642.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

June 20, 1995.

Holleb & Coff by Joseph L. Matz, Christopher J. Horvay, J. Michael Williams, Nancy A. Peterman, Winston & Strawn by Edward L. Foote (argued), Chicago, IL, for Duplitronics.

Schwartz, Cooper, Greenberger & Krauss, Chtd. by Janet Baer, Robert D. Glick, Eric S. Rein, Chicago, IL, for LaSalle.

Sedgwick, Detert, Moran & Arnold by T. Scott Leo, Howard Marks, Harold E. McKee, Chicago, IL, for Hanover.

Northen, Blue, Rooks, Thibaut, Anderson & Woods, L.L.P. by John A. Northen, Chapel Hill, NC, Askounis & Borst, P.C. by Vincent T. Borst, Thomas V. Askounis, Chicago, IL, W. Thad Adams, III, P.A. by W. Thad Adams, III (argued), Charlotte, NC, for Concept Design.

## MEMORANDUM OPINION AND ORDER

JOHN D. SCHWARTZ, Chief Judge.

Duplitronics, Inc. ("Duplitronics" or "Debtor") has filed a complaint seeking a temporary restraining order, preliminary injunction and permanent injunction and declaratory judgment ("Complaint") against Concept Design Electronics and Manufacturing, Inc. ("Concept Design"), The Hanover Bay Insurance Company ("Hanover"), Massachusetts Bay Insurance Company ("Massachusetts Bay") and LaSalle National Bank ("LaSalle"). The gist of the Complaint is to prevent the payment of a judgment entered by the United States District Court for the Western District of North Carolina in favor of Concept Design, affirmed by the Court of Appeals for the Federal Circuit. A supersedeas bond was posted by Duplitronics and a letter of credit issued as collateral for that bond. Duplitronics seeks to enjoin any demand or payment of the bond and the letter of credit. It also filed a motion for a temporary restraining order. In addition, LaSalle has moved this Court for direction as to how to handle payment of the letter of credit. Although this court may have jurisdiction to enter a temporary restraining order following the Supreme Court's decision in *Celotex Corp. v. Edwards,* —— U.S. ——, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), it declines to do so. The court is of the opinion, for the reasons hereinafter set forth, that given the undisputed facts there are no legal grounds on which to grant Duplitronics' motion for a temporary restraining order.

## BACKGROUND—UNDISPUTED FACTS

On November 17, 1993, the District Court for the Western District of North Carolina entered judgment in favor of Concept Design and against the Debtor, Duplitronics, in the amount of $900,000. Duplitronics appealed the judgment to the Court of Appeals for the Federal Circuit. To stay enforcement of the judgment pending this appeal, Duplitronics posted a supersedeas bond ("Bond") to secure the judgment, interest, damages and costs if it lost the appeal. Duplitronics executed the Bond as principal, and Hanover as the surety. Hanover was apparently unwilling to act as surety on the Bond without some assurance that it could collect any monies it paid on the judgment. Therefore, Duplitronics secured its obligation under its agreement with Hanover by what is described as a clean irrevocable letter of credit issued by LaSalle ("Letter of Credit"). This type of letter is called a "standby" letter of credit for obvious reasons—it "stands by", ready to be used if certain conditions are or are not fulfilled. This letter of credit is dated November 29, 1993 and states:

> We warrant to you that all your drafts under this Clean Irrevocable Letter of Credit will be duly honored upon presentation of your draft(s) drawn on us at LaSalle National Bank, 120 South LaSalle Street, Attention International Department, Chicago, Illinois 60603 on or before the expiration date or on or before any automatically extended date as set forth below. *Our obligation under this Letter of Credit is the individual obligation of the Bank, in no way contingent upon reimbursement with respect thereto, or upon our ability to perfect any lien or security interest. Further, our obligation is no way contingent upon your obligation under any guaranty or surety bond for which this Letter of Credit is or may be given as full or partial collateral.* (emphasis added)

This Letter of Credit is subject to the Uniform Customs and Practice for Documentary Credits (1983 Revision) International Chamber of Commerce Publication No. 400.

The Federal Circuit affirmed the judgment. Duplitronics petitioned for rehearing and suggested a rehearing en banc. On February 21, 1995, the Circuit Court issued an order denying the petition for rehearing and the suggestion for rehearing en banc. Duplitronics' Motion to Stay Mandate was denied by that court on March 6, 1995 and the mandate issued. On March 8, 1995, Concept Design moved in the District Court for an order compelling payment of the judgment. Duplitronics filed a motion pursuant to 28 U.S.C. § 2101(f) on March 27, 1995 for an order staying execution on the judgment to permit application to the Supreme Court for a writ of certiorari. In a carefully reasoned and persuasive opinion, Judge Robert Potter on May 19, 1995 granted Concept Design's motion to enforce liability against Hanover and denied Duplitronics' motion to stay execution while seeking certiorari. Although Duplitronics could have presented an application to stay enforcement of the judgment to the Supreme Court under 28 U.S.C. § 2101(f) and Sup.Ct.R. 23, it apparently determined not to do so.

Concept Design, as it has a right to do, has demanded that Hanover honor its obligations under the Bond, and Hanover is apparently facing a contempt motion in the District Court to compel payment on the Bond. Hanover, to protect at least a portion of its obligations under the Bond,[1] on June 2, 1995 delivered a conforming sight draft to LaSalle requesting a full draw on the Letter of Cred-

it. LaSalle advised Hanover that it would honor the sight draft on June 7, 1995, which this Court understands to be within the guidelines set forth in the Uniform Customs and Practice for Documentary Credits, but thus far LaSalle has failed to do so. Likewise, Hanover has not paid Concept Design on its obligation as surety under the Bond.

On June 2, 1995, Duplitronics commenced proceedings under Chapter 11 of the Bankruptcy Code. On June 7, 1995, Duplitronics filed its Complaint. On June 9, 1995, LaSalle moved this Court for direction on how to handle payment of the Letter of Credit. The court refused to entertain the motion and continued it to June 14, 1995. The court has heard and considered oral argument from counsel for all parties and has received and examined all pleadings and other documents filed with the court.[2]

### *JURISDICTION*

This matter is before the Court pursuant to 28 U.S.C. § 157, and is referred here under Local District Rule 2.33. This court has subject matter jurisdiction and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

### *DISCUSSION*

The hearing on Duplitronics' Motion for a Temporary Restraining Order ["TRO"] was held on June 14, 1995. The facts are not an issue between the parties, except as to whether or not the Supreme Court will grant the relief Duplitronics seeks in its petition for certiorari (see infra pp. 1016–17). The issues of whether the § 362 automatic stay[3] applies

---

1. Although Hanover can only draw on the Letter of Credit up to $900,000, its liability on the Bond for payment of the judgment and other costs exceeds $1,040,000. On May 19, 1995, Judge Potter entered an order taxing Duplitronics with attorney's fees and expenses in the amount of $78,703.07, and interest has been accruing on the judgment.

2. The court has received the following pleadings and documents: (1) Duplitronics' Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Declaratory Judgment; (2) Duplitronics' Motion for Temporary Restraining Order ("TRO"); (3) Certificate of Jeffrey Binder in Support of Duplitronics'

Motion for TRO; (4) Duplitronics' Memorandum in Support of Motion for TRO; (5) LaSalle's Emergency Motion for Direction on Payment of Letter of Credit; (6) Hanover's Memorandum Regarding Emergency Motion for Direction; (7) Duplitronics' Supplemental Memorandum in Support of Motion for TRO and Complaint for Injunctive and Declaratory Relief; (8) Response by Concept Design to Duplitronics' Motion for TRO; and (9) Hanover's Memorandum in Opposition to Duplitronics' Motion for TRO.

3. Unless otherwise indicated, all section and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

**1014**

or whether Hanover or its affiliate, Massachusetts Bay,[4] ought to be enjoined from payment of the Bond and requesting payment of the Letter of Credit are questions of law. What are the legal bases this court can rely upon for application of the § 362 automatic stay or issuance of a § 105 injunction (TRO) under the undisputed facts?

### Property of the Estate and the Automatic Stay.

Duplitronics alleges that "the payment of the [B]ond or the [L]etter of [C]redit or both of them would constitute a violation of the [§ 362] automatic stay...." (Complaint ¶ 4)

A supersedeas bond is generally required by trial courts to obtain a stay of execution on a judgment pending appeal. *See, e.g.,* Fed.R.Civ.P. 62(d). The purpose of the bond is to protect the appellee, who normally would have the right to execute on the judgment immediately, and "insures that if the judgment is affirmed, the appellee will have a source of recovery and will not have been prejudiced by being prevented from executing on the judgment." Michael R. Smith, "Obtaining a Supersedeas Bond," 23 Colo.Law. 607 (1994). The appellant retains a reversionary interest in the bond subject to divestment. *Edwards v. Armstrong,* 6 F.3d 312, 316 (5th Cir.1993), *rev'd on other grounds sub nom. Celotex Corp. v. Edwards,* — U.S. —, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). That is, if the appeal is successful and the judgment is overturned, what is left of the bond reverts to appellant.

In the event that the appeal fails, appellant is divested of its interest in the bond. Upon the lodging of the mandate of the appellate court with the trial court, the appellate process has concluded, at least as concerns the appeal bond, and the appellant no longer has a property interest in the bond. *See, e.g., In re Southmark Corp.,* 138 B.R. 820, 828 (Bankr.N.D.Tex.1992). If the appellant then commences a bankruptcy proceeding, the foregoing bond is not property of the appellant's estate. *In re Keene Corp.,* 162 B.R. 935, 942 (Bankr.S.D.N.Y.1994); *Edwards,* 6 F.3d at 316–317; *Willis v. Celotex Corp.,* 978 F.2d 146, 149 (4th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1846, 123 L.Ed.2d 470 (1993). If the bond is not property of a debtor, as property is defined in the Bankruptcy Code, it is not property of the debtor's estate.[5] When a debtor files for bankruptcy protection, an automatic stay is imposed against, *inter alia,* "any act to obtain possession of property of the estate." § 362(a)(3). "[T]he automatic stay provisions of § 362(a) do not apply to the guarantor [surety] of a supersedeas bond because the bond is not property of the bankrupt's estate once the bond has matured and become enforceable." *Edwards,* 6 F.3d at 317.

Duplitronics has argued that the appellate process covered by the Bond includes the petition for certiorari, that the Bond has not yet matured, and therefore Duplitronics retains a reversionary interest in the Bond subject to divestment if the petition is denied. Both the Court of Appeals and the District Court determined that the Bond does not cover Duplitronics' petition to the Supreme Court for writ of certiorari when they denied a stay.[6] This court determines likewise. The Bond does not cover the filing of a petition to the Supreme Court (see pp. 1012–13). The Bond has matured and Duplitronics' bankruptcy estate has no interest in it. Duplitronics relies upon cases supporting the proposition that a bankruptcy estate has an interest in a bond when the bond was either not given to satisfy the judgment[7] or

---

4. If required, "Hanover" will refer to both Hanover and Massachusetts Bay.

5. Property of the estate is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). *See U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). Since the debtor has no interest in a supersedeas bond after final judgment on an unsuccessful appeal, the bond is not property of

the estate. *See, e.g., In re Alwan Bros. Co.,* 112 B.R. 294, 296 (Bankr.C.D.Ill.1990).

6. The Bond, by its own terms, does not cover a petition for a writ of certiorari, covering only the appeal to the Federal Circuit. In fact, it is titled "Appeal Bond".

7. *Taneytown Tires, Inc. v. J & D Trucking Co. Inc. (In re Great Eastern Express, Inc.),* 37 B.R. 579, 582 (Bankr.M.D.Pa.1984) ("We think that the cash bond was 'intended to *protect* the judgment,

when no judgment of the appellate court has been entered.[8] The Bond for which Hanover was surety does not fall into either category. It is not property of the estate, and for Hanover to pay Concept Design under the Bond, as the District Court has ordered it to do, cannot violate the § 362 automatic stay.

Duplitronics has relied extensively, both in its memorandum of law and at the hearing, on the *Sheldon* and *Borman v. Raymark Industries, Inc.*, 946 F.2d 1031 (3rd Cir. 1991), cases. These two cases are not on point with the facts of the matter before this court. As the court noted above, *Sheldon* differs from these facts in that the appeals court in that case had not yet ruled when the debtor filed bankruptcy. In *Sheldon* the Seventh Circuit disagreed with the Third and Tenth Circuits, and decided that even when a supersedeas bond has been posted for an appeal, modification of the automatic stay is necessary for the appeal to go forward.[9] In the matter now before the court, the appeal in question for which the Bond was given has already gone forward and the mandate has issued and been deposited with the trial court. As Concept Design pointed out in its memorandum of law, *Borman* stands for the same principle as *Sheldon,* and both of them are far from holding that a judgment creditor cannot proceed against a supersedeas bond once the appeal process for which the bond was given has been concluded.[10]

■ Virtually the same reasoning applies to the Letter of Credit. By issuing the Letter of Credit, LaSalle has assured the beneficiary, Hanover, that no matter what tragedy befalls the bank's customer, Hanover will receive the monies owed it. Under a standby letter of credit as in the instant case, the bank is primarily liable to the beneficiary. As is stated on the face of the Letter of Credit, "[o]ur obligation under this Letter of Credit is the individual obligation of the Bank." The beneficiary no longer need worry about the financial condition of the bank's customer. The risk of the customer's, here the judgment debtor's, insolvency or inability to promptly pay has been shifted from the beneficiary to the bank, a party who can better assess that risk and protect itself.

> It is axiomatic that letters of credit represent obligations of the bank completely independent of the underlying transaction.... Parties that bargain for a letter of credit assume that regardless of war, revolution, or other catastrophe, the letter will be honored when the documents specified in the letter are presented....
>
> General principles of bankruptcy reinforce the independence of the bank's obligation to honor drafts in a letter-of-credit transaction from its rights against its now insolvent customer.

Douglas G. Baird, "Standby Letters of Credit in Bankruptcy," 49 U.Chi.L.Rev. 130, 144–145 (1982) (footnotes omitted).

■ Because a bank's obligation on a letter of credit is independent of the transaction between the beneficiary and the bank's customer, it is settled law that the letter of credit is not property of the estate and that the § 362 automatic stay is inapplicable. *In re North Shore & Central Illinois Freight Co.,* 30 B.R. 377, 378–379 (Bankr.N.D.Ill. 1983); *In re M.J. Sales & Distributing Co., Inc.,* 25 B.R. 608, 614–615 (Bankr.S.D.N.Y. 1982). *See also Matter of Compton Corp.,* 831 F.2d 586, 589 (5th Cir.1987).

LaSalle issued a Letter of Credit to Hanover, the beneficiary, and LaSalle's obligation on the Letter of Credit is completely independent of the relationship between LaSalle and Duplitronics, the applicant. The purpose of such a letter of credit is to shift the risk of

---

not to serve as the vehicle for *satisfying* it....' " (quoting *Alexander and Alexander, Inc. v. Central Penn National Bank,* 279 Pa.Super. 323, 421 A.2d 220, 223 (1980) (Spaeth, J., dissenting), reversed, 494 Pa. 219, 431 A.2d 228 (1981))).

**8.** *See Sheldon v. Munford,* 902 F.2d 7 (7th Cir. 1990).

**9.** It must be remembered that § 362(a)(1) operates as a stay of "the ... continuation ... of a

judicial ... proceeding against the debtor....". Therefore, for an appeal to go forward after the defendant has filed bankruptcy, relief from the stay must be sought regardless of a bond.

**10.** In fact, the *Borman* court explicitly stated that it "express[ed] no opinion on whether the supersedeas bond is considered property of the estate under the Bankruptcy Code." 946 F.2d at 1037.

Duplitronics' insolvency from Hanover to La-Salle. If the result of Duplitronics' bankruptcy filing is that LaSalle may not pay out on the Letter of Credit, then the transaction was an exercise in futility. *See In re Page,* 18 B.R. 713, 717 (D.D.C.1982) ("If payment on a letter of credit could be routinely delayed by the filing of a Chapter 11 petition the intended substitution of a bank for its less credit-worthy customer would be defeated."). Duplitronics has taken the position that for LaSalle to pay on the Letter of Credit would violate the automatic stay, and its position flies in the face of well-reasoned and settled principles of bankruptcy as well as commercial law.

### Section 105 Injunction.

Paragraphs 22 through 27 of the Complaint are Duplitronics' allegations of why an injunction should issue. If, as the court has determined, the § 362 automatic stay has no impact on Hanover's duty to pay on the Bond and on LaSalle's duty to pay on the Letter of Credit, Duplitronics, as alternative relief, has asked the court to exercise what has recently become nearly limitless powers under § 105 [11] and issue a temporary restraining order blocking all parties from paying or receiving anything by reason of Concept Design's judgment.[12]

■ Before reaching the issue of whether an injunction is appropriate in this matter under Fed.R.Civ.P. 65 (made applicable to bankruptcy proceedings through Fed. R.Bankr.P. 7065), the court must examine whether or not the admitted facts warrant the issuance of such an injunction. The Seventh Circuit has described four factors for the court to consider in determining whether to issue a temporary restraining order. The movant must first demonstrate (1) some likelihood of prevailing on the merits, and (2) an inadequate remedy at law and irreparable harm if the TRO is not granted. These elements must be satisfied before the court continues its inquiry. The court will then consider (3) the balance of harms between the movant and the non-moving party if relief is granted or denied, and (4) the potential harm to the public interest. *Erickson v. Trinity Theatre, Inc.,* 13 F.3d 1061, 1067 (7th Cir.1994); *Abbott Laboratories v. Mead Johnson & Co.,* 971 F.2d 6, 11–12 (7th Cir. 1992). *See Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 386–388 (7th Cir.1984).

■ As for the likelihood of prevailing on the merits, counsel for Duplitronics has explained how, in his opinion, the petition to the Supreme Court for writ of certiorari has a better-than-average chance of being heard. This court took a crash course in patent litigation as counsel described the recent rulings of the Federal Circuit, which he believes will have an impact on the Supreme Court's decision on Duplitronics' petition. Counsel for Concept Design disagreed with the position taken by Duplitronics' counsel, and advised the court that the Supreme Court grants approximately 3% of certiorari petitions. The standard, however, is not whether Duplitronics' chances of having its petition granted are better than average. Even with a "better than average" chance of success, when the odds are so low it cannot be said that Duplitronics has met its burden of proving a likelihood of success. It is to be remembered that four judges have considered the merits and found against Duplitronics.

Although Duplitronics' likelihood of success on the merits is the most important factor for this court to consider, *Matter of L & S Industries, Inc.,* 989 F.2d 929, 932 (7th Cir.1993) (because of bankruptcy court's broad equitable powers, movant need only establish a likelihood of success on the merits),[13] the court will not, however, ignore the other factors, none of which tip the scale in Duplitronics' favor. Duplitronics has failed to demonstrate how allowing Concept Design to be paid on the Bond and Hanover to draw

---

**11.** *Celotex Corp. v. Edwards,* —— U.S. ——, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

**12.** 11 U.S.C. § 105(a) provides that the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The only

matter now before the court is Duplitronics' motion for a TRO.

**13.** Duplitronics has not even established a likelihood of success on the merits, which is the low threshold that *L & S Industries* requires it to cross before a § 105 injunction can be entered.

on the Letter of Credit will cause irreparable harm. Neither the Bond nor the Letter of Credit are property of Duplitronics' bankruptcy estate. *Keene,* 162 B.R. at 942. Presumably LaSalle or its guarantor will then stand in line with Duplitronics' other creditors, essentially taking Concept Design's place, or exercise whatever additional rights such guarantor may have. The guarantors are not before the court.

Duplitronics' counsel suggested at oral argument that substituting LaSalle's claim[14] for Concept Design's judgment will foreclose any chance for the Debtor to bifurcate the judgment on the grounds that two-thirds of the judgment amount was due to trebling, and that attorneys' fees and interest were added. Duplitronics should have considered these issues, if they are issues, long before now and probably before it decided to bond over Concept Design's judgment. This suggestion looks suspiciously like the argument advanced by the movant in *Keene,* an argument which was firmly rejected by the bankruptcy court. The movant argued that the judgment claims would be "elevated" from contingent to secured when the bank issuing the letter of credit was substituted for the judgment creditor in the bankruptcy. As Judge Bernstein stated so well:

> [The Debtor] "elevated" these claims when, prior to bankruptcy, it elected to appeal adverse judgments, and post appeal bonds to avoid the disruption of collection activity. Having done so, [Debtor] created in favor of these creditors rights greater than those enjoyed by the general creditor body, and those rights became liquidated, fixed and non-contingent. . . .

> [Debtor] correctly argues that a Bankruptcy Court can subordinate, disallow or limit punitive damage claims. Further, the preclusive effect of a final judgment would not bar consideration of this argument if the judgment creditor asserted the judgment as a claim against the estate.

> It does not follow, however, that a court of equity can prevent the judgment creditor from enforcing its disallowed or subordinated punitive damage award against the

surety or escrow. Such a result ignores 11 U.S.C. § 524(e) which provides:

> Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

> Although Section 524(e) speaks in terms of "discharge", its scope is greater. The "import" of this provision is that "the mechanics of administering bankruptcy, no matter how suggestive, do not operate as a private contract to relieve co-debtors of the bankrupt of their liabilities." *Union Carbide Corp. v. Newboles,* 686 F.2d 593, 595 (7th Cir.1982) (per curiam) (construing Section 16 of the 1898 Bankruptcy Act, the predecessor to Section 524(e)).

*Keene,* 162 B.R. at 945 and 947. The court adopts Judge Bernstein's reasoning.

Duplitronics has also failed to establish that it has no remedy at law. It wants to pursue the petition for writ of certiorari and perhaps a Fed.R.Civ.P. 60(b) motion in the District Court, but despite having spent two weeks under the protection of the Bankruptcy Code, it has only now filed its motion for relief from the automatic stay in order to pursue its two courses. And if, somewhere down the road, the petition is granted, the case is remanded, a new trial is held and Duplitronics prevails, an adequate remedy at law is clearly available—money.

Finally, this court has no doubt about the harm to the public interest that would ensue if an injunction were granted. The court is of the opinion that supersedeas bonds and letters of credit are sacrosanct obligations. For this court, on the undisputed facts before it, to undermine the well-founded reliance placed on these documents by the national and international legal and financial communities would be inappropriate. Allowing Duplitronics a second opportunity to avoid paying the judgment would do damage to a system that the law and commerce of this nation and other nations have come to rely upon over hundreds of years; the integrity of a supersedeas bond and of a letter of credit. If this court were to issue an injunction

---

14. LaSalle's claim is not secured by Duplitronics.

preventing the payment of the Letter of Credit, a measure of doubt would be injected into every future transaction requiring a standby letter of credit. The same can be said of a matured supersedeas bond given for payment of a judgment.[15]

Even if Duplitronics had satisfied all four elements, the issuance of a § 105 injunction would be inappropriate for three reasons. First, Duplitronics is essentially seeking a reexamination of Concept Design's judgment by requesting that the sought-for injunction restrain Hanover's payment of "the Bond until such time as this Court adjudicates the allowance or disallowance of Concept Design's claim in this case...." (Complaint, Prayer for Relief ¶ 6)

This request goes far beyond this court's jurisdiction and perhaps any court other than the Supreme Court. To suggest that a final judgment obtained prior to the commencement of a bankruptcy case can be reopened by this court and in effect retried makes no sense.

It is axiomatic that [Debtor] cannot collaterally attack the *amount* of the final judgments in this Court. Section 1738 of Title 28 of the United States Code mandates that every United States Court give full faith and credit to the "acts, records and judicial proceedings" of any state, territory or possession to the same extent they have in their own courts. Section 1738 applies to Bankruptcy Courts, and absent fraud in the procurement of a default judgment, "[b]ankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction." *Kelleran v. Andrijevic,* 825 F.2d 692, 695 (2nd Cir.1987). Under the doctrines of res judicata and collateral estoppel—which also apply to federal court judgments—the la-

ter court cannot alter the results of a prior final judgment even if that judgment was wrong. *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981).

*Keene,* 162 B.R. at 946. There is an end to litigation. The judgment in question is a final one as respects the Bond and only the Supreme Court at present has the authority to set it aside.[16] It is the opinion of this court that to even suggest that this court has the jurisdiction to effect a reversal of the final judgment of the District Court, affirmed by the Federal Circuit, borders on the ludicrous.

Secondly, this injunction would allow Duplitronics a second bite at the apple by preventing Concept Design's collection of its affirmed judgment. Duplitronics got its first bite at the apple when it appealed the District Court's judgment. It could have done so without posting a bond. Of course, it then would have had to pay the judgment; so instead, it filed the Bond. Two federal courts have denied Duplitronics the relief it seeks here, a stay until the Supreme Court acts on its petition. Duplitronics would have this court second guess those two courts. This is similar to the collateral attack for which the Supreme Court reprimanded the *Celotex* plaintiffs. *Celotex,* —— U.S. at ——, 115 S.Ct. at 1501. In a very real way, this case represents a mirror image to *Celotex.* The District Court has ordered Hanover to pay the judgment as surety on the Bond. Duplitronics is collaterally attacking that order in this court. This is inappropriate, as there is no property of Duplitronics' estate which is to be taken to pay the judgment.[17]

Duplitronics believes that the judgment of the Federal Circuit was wrong and has sought redress by use of a petition for certio-

---

**15.** The court has not described the balance of harm to the parties, but clearly every day increases Hanover's obligations under the May 19, 1995 Order of Judge Potter, obligations not covered by the Letter of Credit (see note 1). Duplitronics has failed to mention this harm to Hanover.

**16.** The question of Duplitronics' Fed.R.Civ.P. 60(b) motion is only a possibility at this juncture. No motion has been filed and clearly this court has no jurisdiction to entertain such a motion.

**17.** See discussion in "Property of the Estate and the Automatic Stay", pp. 1014–16. *Cf. Page,* 18 B.R. at 715–716 (bank was ordered to pay on letter of credit even though cashing the letter of credit would give rise to a claim in the bankruptcy case by the bank, because the bank's "claim will not divest the debtors of any property since any attempt to enforce that claim would be subject to an automatic stay....").

rari. As a second bite at the apple it would have these proceedings act as a supersedeas bond by enjoining the payment of the bonded judgment which is the subject of the petition for certiorari. The Bond in question has matured. Two federal courts have found that it does not cover the petition for certiorari and Duplitronics has not sought a stay from the Supreme Court. Must the winning party, Concept Design, await a decision on the petition for certiorari before collecting its winnings from the Bond? The answer is no. Under the undisputed facts of this matter, to enjoin the payment of this judgment on the basis suggested by Duplitronics would in this court's opinion be wrong.

Lastly, for this court to enter an injunction would be a seizure of power far beyond what is in the court's means to grasp. This court is not faced with the unique circumstances attendant to the filing of an asbestos-related bankruptcy, where tens of thousands of lawsuits are pending nationwide in various stages of completion. These cases have required unusual and creative responses, and the bankruptcy courts have risen to the challenge. *See In re Johns–Manville,* 26 B.R. 420 (Bankr.S.D.N.Y.1983), *aff'd,* 40 B.R. 219 (S.D.N.Y.1984); *In re Celotex Corp.,* 128 B.R. 478 (Bankr.M.D.Fla.1991); *In re Keene Corp.,* 162 B.R. 935 (Bankr.S.D.N.Y.1994). *See also In re A.H. Robins Co., Inc.,* 828 F.2d 1023 (4th Cir.1987), *cert. denied sub nom. Oberg v. Aetna Cas. and Sur. Co.,* 485 U.S. 969, 108 S.Ct. 1246, 99 L.Ed.2d 444 (1988) (Dalkon Shield litigation).

Duplitronics, however, has come before this Court and asked for a § 105 injunction (TRO) to protect it from a single judgment, a single lost appeal. Thousands of lawsuits against Duplitronics are not pending in courtrooms all around the country; thousands of unknown plaintiffs are not developing asbestos-related health problems on which they may sue at some future date.[18] Whether a bankruptcy court should enjoin enforcement of a supersedeas bond or a letter of credit in such a case is not the issue before the court. Clearly, however, such an injunction would be totally inappropriate in the instant case.

*CONCLUSION*

The court has determined that as a matter of law the Debtor's estate has no interest in the Bond or the Letter of Credit under § 541 of the Bankruptcy Code and therefore § 362 does not prevent Concept Design's demand on Hanover or Hanover honoring its obligation as surety under the Bond. Put another way, the payment of the Bond and the Letter of Credit does not violate the automatic stay imposed by § 362 of the Bankruptcy Code. The payment of the Bond and the Letter of Credit will not irreparably harm Duplitronics as the Bond is not property of the Duplitronics bankruptcy estate, and the Letter of Credit is the individual obligation of LaSalle (see pp. 1015–16).

Cutting through all the verbiage of the Complaint, supporting documents and arguments, what the Debtor seeks amounts to a stay under Supreme Court Rule 23 and Section 2101 of Title 28 of the United States Code. Duplitronics did not succeed in obtaining such a stay from the District Court of the Western District of North Carolina or a stay of the mandate from the Court of Appeals for the Federal Circuit, and did not seek any stay from the Supreme Court before commencing this case. This court, though it may have the bare authority, does not believe that authority should be exercised on the basis of the undisputed facts and the law bearing on this matter.

NOW THEREFORE IT IS ORDERED FOR THE REASONS STATED ABOVE:

1. That, Duplitronics' Motion for a Temporary Restraining Order, be and the same, is hereby denied;

2. That, LaSalle's Emergency Motion for Direction on Payment of Letter of Credit, be and the same, is hereby denied.

**IT IS FURTHER ORDERED** that a status hearing is set before this court for July 10, 1995 at the hour of 10:30 a.m.

---

18. Broad § 105 injunctions are not always issued or at least continued in every asbestos-related bankruptcy. *See In re Keene Corp.,* 162 B.R. 935, 946 (Bankr.S.D.N.Y.1994).